May I please support? My name is Mark Kandivigneshi and I am representing the petitioner. There are three issues. One is the adverse credibility finding. The other one is the enumerated grounds for asylum. The third one is abuse of discretion due to the fact the respondent was not provided a competent interpreter. Can you focus, it would be helpful for me at least, if you'd focus on the three things that the BIA cited in its affirmance of the adverse credibility finding. It said there were three grounds that supported it. The IJ had more but this isn't a matter of a Bono case so we're just dealing with what the BIA had to say. Which of those findings in your view are not supported by the record? Those are the, those are, there are three. One is the respondent fled India due to the fact that he had a, he had a issue with his life. The respondent consistently testified. I don't know why the board found that, that he has inconsistent. The record reflects that many times he repeatedly said that he came to USA due to the life, threat to his life. Even the government, the immigration attorney, the ICE counsel asked the petitioner about the reason why he came to United States. He suggested that he's going to work but the petitioner stated that his prime intention to save his wife and his children and him. The second finding is that Mr. Razak testified that the senior leader of the Hindu fascists, whose name I will get wrong and therefore I won't try to statement he gave to the CBP officer, said that the leader beat him. Is that finding supported by the record? First of all, my argument is that the airport statement is not reliable because of the fact it is not developed through any examination but there is an evidence for that. Before you leave that thought, I wanted to ask you about the There are initials at the bottom of each page of the statement to the agent and then your client signs it at the end, or at least it appears your client signs it at the end. Are those his initials? Yes, yes. Do they reflect that he actually reviewed the statement before signing it? I'm not sure, your honor, whether he was provided with an interpreter. He clearly had a hard copy in front of him. He put his initials on it, right? Right, yes. Does that give this more weight than we might give just a border patrol officer's recollection of what occurred here? And the petitioner stated that during the hearing, that is page 105, line 19, petitioner testified Ram Kovalan did not directly beat or assault him. He did not directly beat. So probably the reasonable presumption, assumption that the petitioner must have told the airport officials that he was assaulted, Ram Kovalan assaulted, but he was not, he did not directly assault him. I don't know who he testified to. I mean, just my question is how can we find that the record doesn't support what the BIA found, given, given what we're looking at? Beg your pardon? How could we find that the record doesn't support what the BIA found, that this is an inconsistency? The respond, my argument is that the airport statement is not reliable because it's not developed through any, any follow up questions. In fact, the petitioner stated at the airport that Ram Kovalan assaulted or beaten him, but he gave an explanation at the hearing. He did not directly, the keyword is not directly beaten him or assaulted him. So there is no inconsistency in fact. So let me ask a question that comes from Judge Thomas's question. You can't deny that the statement at the airport, at least as transcribed, is inconsistent with your client's testimony at the hearing, correct? I mean, there he says he was beaten by the leader in the first one, and the second one says, no, he was assaulted. But that is an inconsistency, is it not? On his face? Yes. Yes. Okay. On his face, yes. As to the third one, which is where his mother and wife were there when he was assaulted, whether it was examination or in his declaration, asylum application, that his family was present at the time he was assaulted by the police or other people who encountered him on September or any time. As I understand the record, he was assaulted, taken to some other location and then beaten. And as I read his testimony, it seems to say his wife and mother were there when he was taken, the initial assault, but he doesn't testify that his wife and mother were there when he was beaten at this other location, correct? Yes. Well, so what does, in your view, what does the record show about what part of all of this his family was present during? In the record, he said he testified his family was not present. They were in their native village. That is the page 115, lines 11 to 12. He categorically answered on cross-examination, the time of the incident, the time of the incident, and the time of the incident. The time of the particular incident, his family was in his native village. So was his family present at all during any part of the attack? No. He never testified they were present. According to his testimony, when he was initially accosted by this group, correct? Because he says they shouted slurs at his wife and mother. Yeah, but it doesn't mean that they were present. They may use the bad word to abuse them, threaten them, but the petitioner never testified or never said that they were present at the time of the incident. You're down to about two minutes. Do you want to save the rest of your time for rebuttal? Yes. Let's hear from the government. Good morning. May it please the court. My name is Taryn Arbeiter for the respondent in this matter. Substantial evidence supports the agency's adverse credibility determination in this case because Mr. Optorazic initially told an immigration officer that he was assaulted by a single individual who beat him with his hands because he sold beef. His claim later evolved to a four-day detention involving five individuals and a police officer who beat him with a nylon rope in his apartment, detained him for four days, committed sexual assault, spit on him. I mean, your arguments are, I think, accurate based on the record, but the BIA was a bit narrower in how it approached this, and at least on this one it said the inconsistency is whether this one gentleman was the one who committed the beating or merely directed it, and does substantial evidence support that finding? Substantial evidence does support the finding. I know we said this was not a matter of a Bono case, but in this case the board agreed with the immigration judge's finding that Mr. Ramagopoulos was not there. But aren't we limited to reviewing the three that they cited? Yes, the three inconsistencies. However, the immigration judge and the board both note that it was stated that he was beat with his hands by Mr. Ramagopoulos, and that's not what occurred according to his later testimony. I understand, but we can't get into whether he was sexually assaulted and all those other things because the BIA didn't find that to be an inconsistency. The BIA just found the inconsistency to be his statement to the border patrol officer that Mr. Ramagopoulos, I know I would get it wrong, beat him with his hands, and that later his testimony at the hearing that he didn't personally participate in the beating. That's the inconsistency that the board found, right? Yes. However, I think it's implied when the board is discussing beating with the hands that he was assaulted or attacked in some other way, and so to some degree saying that is different. That's correct, Your Honor. I would say that this is part of the first inconsistency. Let's put that one aside for a second because I'm not sure the other two are inconsistencies, and that's why I want to ask you about them. He said that his wife and mother were present, but what he said was that the attackers shouted slurs at his wife and mother, but he testified he was taken somewhere else and wasn't returned for four days and was beaten at the place where he was taken. He never said his wife and mother went to the place where he was taken, did he? My understanding, Your Honor, is that Mr. Abdurazek testified at his merits hearing that he was detained at his apartment for four days, and so there is an inconsistency there because he stated in his declaration that his mother, wife, and children were abused verbally and threatened, whereas in his testimony he stated that they were not there, that they were in the home village. And he was given a chance to explain that. Didn't he testify that they were in his home village at the time he was released? So, Your Honor, he explained that his wife and children were not at home at all during his alleged detention on pages 114 and 115 on cross-examination. But the detention was supposed to have occurred over a course of four days, correct? That is correct, Your Honor. And he was taken at one point, kidnapped if you will, by his attackers and then taken wherever he was taken, I'll go through the record and see if I can straighten that out in my mind, to a place where he was further beaten. Does he ever testify that his wife and mother are present at the place where he was beaten? Your Honor, he stated in his declaration that his wife, children, and mother were abused and threatened when he was first. And I think it's a fair reading of the record that he did claim that they were abused and threatened when they took him away. My question is, because the BIA is quite clear on this, is there any testimony that says that the wife and mother are with him while he's being beaten? So there's not testimony, Your Honor? Yes, because the BIA finds it to be an inconsistency. And I can't find any statement by him that says they were with him. And as you say, the record suggests he said they weren't at the apartment. And this occurred over four days. And the beating that he's talking about apparently occurs after he's taken. So I'm trying to figure out why that's inconsistent. Well, Your Honor, there's a number of inconsistencies there. First, in the border interview and in his credible fear interview, he didn't mention his mother, wife, and children at all. But the BIA didn't find that. The BIA's finding is he initially testified that his mother and wife were present during the beating. And in his declaration, he indicates the attacker shouted at his mother, wife, vulgarly. However, on cross-examination, he stated his wife and children were not present during the beating. So I can't find any testimony where he says his wife and mother were present during the beating.  Yes, Your Honor. On page 87, during direct testimony, he says that my mother and wife were threatened, abused and threatened to be killed. No, I understand that. I'm asking a much more specific question. Does he ever say my wife and mother were present during the beating? So, Your Honor, I think that the immigration judge and the board found that that statement implied that they were present. I think there is a little bit of ambiguity there, possibly, that as Petitioner's Counsel stated, it could mean that he was abused, they were abused verbally and they were not present. However, the court, I believe, should defer to the agency's finding there that that means that they were present. So there is an inconsistency there between his direct testimony and his cross-examination. Let me ask the same question I asked in the last case. Let's assume for a moment, just for purposes of discussion, I know you can tell me otherwise, that the only one of the BIA findings that's supported by the record is the second one about the beating by the leader of the group. Now, we were to find the other two were not supported by the record. What do we do under the totality of the circumstances test? Your Honor, under the totality of the circumstances, that is a material part of his claim. Who beat him and how? In his initial border interview, he said it was Mr. Ramagopalan with his hands. In his later testimony, he testified that it was five individuals and a police inspector, and they did not beat him with their hands. They beat him in another manner. So because this is such a central claim, I would say that it goes to the heart of the matter. However, I would also like to point out that Mr. Abdul Razak was given multiple opportunities to explain inconsistencies regarding his mother, wife, and children. Another inconsistency is that he stated in his declaration that it was his mother, wife, and children that were abused. And another, at the merits hearing, he only talked about his mother and wife. Can you just provide just the record sites as to where he was given an opportunity to explain these issues with his mother, wife, and children? So on cross-examination on page 113, he stated that the DHS counsel asked him if his mother and children were home during the detention, and he responded that they were in his home village. When asked why he had written in his declaration that his mother, wife, and children had been abused at the same time that he was detained, he said that happens. He blamed his mental state for any misstatements in his declaration, and he said, now my worries are about my wife and children. That's on page 113 of the record during cross-examination. And so he was questioned about this inconsistency, and he could have given the explanation given by petitioner's counsel that his declaration was misconstrued as stating that they were present, whereas they weren't, or that he had been beaten somewhere initially and then taken somewhere else. However, he did not explain that. He just said that happens. I'm sorry. Are you talking about page 113 of the transcript or the ER? 113 of the entire record. Okay. So he said, my mental state was not that stable. It was completely. I was so sorry for that during that time, and because of my mental torture, that is why. Go on. I didn't mean to interrupt. So DHS counsel asked, why is it that you didn't mention that they shouted out your mother and children in filthy language and threatened to kill them during the hearing when that was the testimony in the declaration? And he said, my mental state was not that stable. That's a question about the omission in the declaration, right? That's a question about not why he didn't say in his declaration that they shouted out at his mother and children. I think he's asking, Your Honor, about the direct questioning when he was asked. But I guess my point is that the BIA doesn't find the shouting out testimony or the omission to be the inconsistency. It rather says he testified inconsistently about whether his wife and mother were present at the beating. Your Honor. Was he ever confronted with that? That is correct, Your Honor, and that is what the DHS counsel is asking him here on page 112. He's saying, now, why is it that you didn't mention when I asked you, if anything. Oh, so he's asking about the cross-examination. When I asked you if anything else happened, that the police or this inspector, quote, shouted at my mother and children in filthy language and threatened to kill them. So he's asking about his merits hearing testimony and why he didn't explain more about his. I guess my question was a little bit different. The BIA doesn't find that his failure to mention in his merits testimony that they shouted out at his family was an inconsistency. The BIA finds that his failure to mention that his family was present during the beating was an inconsistency. And my difficulty with that is I can't find any testimony where he says his family was present during the beating. So you're right, there's an inconsistency there, but it's not the one the BIA seems to be relying on. It says, I want to give you a chance to, it says the inconsistency is you testified that your wife and mother were, you claimed that your wife and mother were present during the beating, but later on you said they weren't. And that's the inconsistency it's talking about. It's not talking about whether somebody shouted out insults at them or whether he omitted the insults from his declaration, but rather an inconsistency about where they were when he was being beaten. And it says beaten in the BIA decision. So I'm not sure those, he was confronted with this inconsistency, the one that I've just mentioned. Because he was confronted with where, you know, why didn't you mention that your wife and mother were there and the people shouted out stuff at them. But was he confronted with the notion that he was inconsistent about where they were when he was beaten? So, Your Honor, on page 87 during direct testimony he said, they did not allow me to sleep for four whole days and even if I sleep they wake me up and then they beat me and they didn't allow me to sleep properly. They were abusing my mother and my wife. They threatened me to kill them. But that doesn't say that they were present. It says they threatened to kill them. I mean, what does it say that they were physically present at the attack? I'm not following. Go ahead. Well, I think what the, Your Honor, I think that what the board and the IJ understood that to mean was that they were physically present during the beating. And that's a fact finding that I think the court should defer to. Even if we assume that that is what the BIA found, the BIA says that that creates an inconsistency because later on he supposedly testifies that they weren't present during the beating and you cited to 114 for that proposition. That's not what is being asked about on 114. I mean, I'm looking at it. I don't know if you are. But on 114 they ask, where was your family at the time you were released? So how is that inconsistent? Your Honor, I believe the agency's understanding was that his wife and children from that on page 114, that his wife and children were present during his four-day detention. Whereas here he's saying at the time he was released, so at the time, presumably at some point during the detention, his wife and children were not there. So that is the inconsistency. And I see I'm running out of time. I think the link you're pointing to is where were they? Were they present in the apartment? I think it was an apartment, I believe, or not. And he seemed to indicate initially that they were. I think the BIA and the IJ seemed to infer from that that they were therefore present during the whole event. And then he later testified that they were not there at all. And so that did create a broader inconsistency, but it also created a narrower one about where they were at the time of the beating. I guess that was sort of how I was interpreting what the BIA was saying. Thank you, Your Honor. That is how the government interprets what the board and immigration judge understood from the transcript. So I would agree with that. I see I'm running out of time. Actually, you've well exceeded your time. If you want to make one more point. Just in terms of the reliability of the border interview, this court has shown that it agrees with the board's reasoning in JCHF that there are certain indicia of reliability needed to show that the border interview is reliable. And in this case, petitioner has not challenged anything specifically wrong with the border interview that would challenge its reliability. Thank you. Thank you. Counsel, you've got a couple of minutes for rebuttal. Petitioner does not challenge the border patrol statement, but the claim of petitioner is that that is not reliable. Not reliable means actually... Isn't reliability something for the IJ and the board to determine? I must say, we see a lot of border patrol statements. I don't see lots of them that are initialed and sworn to. So shouldn't this one get at least... Shouldn't the weight to be given to it be left to the board? I understand that. But the explanation for that particular portion of the Ram Kobol and Beaton and later on the petitioner explained that during the hearing, he never directly involved in his direction this happened. So that's my argument on behalf of the petitioner. And if you take into consideration in totality of the circumstances, look into the fact that actually the board, in fact, misunderstood the fact that the petitioner was present at the time of the beating of the petitioner at the time of the incident. But if you look at the entire record in totality of circumstances, the petitioner, in fact, many times told that his family was not present at the time when he was specifically asked about them. They were there at the time he stated that they were in their village. Thank you. I don't think my colleagues have any further questions. And if not, with thanks to both sides, this case will be submitted.
judges: HURWITZ, BRESS, THOMAS